DowNet, Judge,
delivered the opinion of the court:
Although there are three contracts in writing between the plaintiff and the United States appearing in the record and made, by general statement of their tenor, a part of the findings, they are not in any degree relied upon by the plaintiff for its cause of action, but liability of the United States thereunder is expressly disclaimed. The plaintiff’s cause of action is founded upon an alleged implied contract, asserted to be entirely separate and distinct from the written contracts, and they appear in the record as a part of the defendant’s case.
The details of the matters here involved out of which it is alleged liability grows are fully set out in the findings, are somewhat voluminous, very fully present the case, and need not be repeated here. The written contracts had to do with space furnished the United 'States by the plaintiff during the war for the freezing and storing of meats.
It was contracted for and the terms fixed, but it is contended that the space was thus let to the Government only because the plaintiff was told or, it is said, threatened, that otherwise it would be taken. But if the granting was thus influenced, or call it coerced, the terms of payment for the space and services to be rendered in connection therewith were entirely to the plaintiff’s satisfaction, in fact of its own fixing.
*230 Meats were required, for army purposes, to be “sharp frozen ” and then placed in proper cold storage until needed for shipment, all contemplated by the- contracts-, but plaintiff’s plant did not contain a- sufficient proportion of space equipped for sharp freezing. The* necessary additional facilities it provided by installing necessary equipment for converting cold storage space into space for sharp freezing at a considerable expense, and upon the incurring of that expense it founds its action, asserting that it was a transaction entirely without the scope of the written contracts and under such circumstances as gave rise to an implied promise on the part of the United States to pay the expense thus incurred. There is coupled also a claim for loss of commercial business.
We are furnished by plaintiff with a brief commendable for its earnestness and abounding in authorities, but the theory seems to us so wholly untenable that We can hardly feel called upon to enter into lengthy discussion or discuss in detail the authorities, especially Since it may be said, as a general proposition, that we find ourselves unable to deduce from the facts of the case those elements necessary to bring it within the many cited authorities upon implied contracts.
We are first confronted by the general rule that all preliminary negotiations are presumed to be merged in the written contract. There are exceptions, and let us assume that possibly this is a case where there might have been a contract, in parol, separate and distinct from the Writings, or, if' not an express contract in parol, an implication from the circumstances out of which would arise an enforceable obligation. Was there by any possibility such a situation here?
Bringing to bear our reason, as we not only may but ought, we can scarcely conceive of a concern like the plaintiff, ably officered by men competent to manage its large affairs, entering into such a contract and leaving not only out of the writing but at wholly loose ends the matter of provision for reimbursing $80,000 of expense to be incurred in preparation for the performance of the contract, if reimbursement was in fact contemplated.
*231 And then our search for the things said or done out of which there may be erected the implication of a promise on the part of the United States to reimburse this expense is vain. We have given the plaintiff the benefit in the findings of every fact of any possible value and, separated from the contract evidenced by the writings, we find no element of obligation. Taken in connection with the contracts themselves the only tenable inference is that performance of the contract, including any necessary preparations therefor, devolved upon the plaintiff in return for the contract compensation.
But even this much of discussion is hardly justified. The manager of the plaintiff company, acting for it in this matter, has disclosed what is no doubt the true situation and it effectually negatives. any idea of a liability against the United States upon implied contract.
It was the undei-standing that this contract, although required to be so written as to operate within the fiscal year, would be renewed each year and that it would continue during the period of the war but not more than five years. It was on plaintiff’s terms as to compensation and, if continued for several years, no doubt profitable and desirable. Plaintiff’s executive head believed the war would last for at least five years and he is sponsor for the statement that in that time he could “ absorb ” these expenses. Incurring these expenses in such a belief repudiates any basis for an implied contractual liability against the Government.
The war ended unexpectedly and no doubt the circumstances entailed a hardship, a loss, on the plaintiff, but its officer's saw fit to take that risk without provision in the written contract for such a contingency, as no doubt might have been procured, and the unfortunate resulting injury can but be regarded as one of the oft occurring wounds for which there is no balm.
The plaintiff’s petition must be dismissed.
Graham, Judge; Hat, Judge; Booth, Judge; and Campbell, Chief Justice, concur.